IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| MARY JO BRADLEY, as Administrator of the Estate of Troy Robinson; R.B., R.B., T.B., J.B., and G.B., through their mother and next friend RAKISHA BANDY; A.D., A.D., AND A.D., through their mother and next friend D'ROSA DAVIS; and T.D., through his/her mother and next friend TAKITA DODSON, | * * * * * * * * * | Civil Action No.: 1:18-cv-1518-WSD **Jury Trial Demanded** |
| Plaintiffs, | * * | |
| v. | * * | |
| OFFICER CASEY BENTON, OFFICER C.M. FRANKLIN, OFFICER L.O. NIEMANN, and DEKALB COUNTY, GEORGIA, | * * * * * | |
| Defendants. | * | |

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Mary Jo Bradley, as Administrator of the Estate of Troy Robinson; R.B., R.B., T.B., J.B., and G.B., through their mother and next friend Rakisha Bandy; A.D., A.D., and A.D., through their mother and next friend D'Rosa Davis; and T.D., through his/her mother and next friend Takita Dodson (collectively "Plaintiffs"), file this First Amended Complaint for Damages against Defendants CASEY BENTON, C.M. FRANKLIN, L.O. NIEMANN, and DEKALB COUNTY, GEORGIA ("Defendants"), showing this Honorable Court the following:

**INTRODUCTION**

1.

This is a civil action asserting claims under state and federal law arising from the unlawful seizure, aggravated assault and battery, and wrongful death of Mr. Troy Robinson

caused by the willful and wrongful acts of the Defendants. Plaintiffs demand a jury trial and seek an award of economic, compensatory, and punitive damages, as well as an award of attorneys' fees and costs.

## PARTIES, JURISDICTION AND VENUE

2.

Plaintiff Mary Jo Bradley is a resident of DeKalb County, Georgia. She is the mother of the late Troy Robinson and the representative of his Estate.

3.

Plaintiffs R.B., R.B., T.B., J.B., and G.B. are minor children of Troy Robinson. They bring this action through their mother and next friend, Rakisha Bandy.

4.

Plaintiffs A.D., A.D., and A.D. are minor children of Troy Robinson. They bring this action through their mother and next friend, D'Rosa Davis.

5.

Plaintiff T.D. is a minor child of Troy Robinson. She brings this action through her mother and next friend, Takita Dodson.

6.

Defendant Officer Casey T. Benton is a resident of Henry County, Georgia and is subject to the personal jurisdiction of this Court. Defendant Benton may be personally served with Summons and a copy of the Complaint at his home address of 328 Jasmine Dr., Locust Grove, GA, 30248, or at the DeKalb County Police Department located at 1960 West Exchange Place, Tucker, Georgia 30084.

7.

At all times relevant to this action, Defendant Benton was acting under color of state law and within the scope of his functions as a duly sworn, certified law enforcement officer employed in the DeKalb County Police Department.

8.

Defendant Officer Charles M. Franklin is a DeKalb County police officer and is subject to the personal jurisdiction of this Court. Upon information and belief, Defendant Franklin is a resident of Fulton County. He may be personally served with Summons and a copy of the Complaint at DeKalb County Police Department located at 1960 West Exchange Place, Tucker, Georgia 30084.

9.

At all times relevant to this action, Defendant Franklin was acting under color of state law and within the scope of his functions as a duly sworn, certified law enforcement officer employed by DeKalb County in the DeKalb County Police Department.

10.

Defendant Officer L.O. Niemann is a DeKalb County police officer and is subject to the personal jurisdiction of this Court. Defendant Niemann is a resident of DeKalb County, Georgia. He may be personally served with Summons and a copy of the Complaint at the DeKalb County Police Department located at 1960 West Exchange Place, Tucker, Georgia 30084.

11.

At all times relevant to this action, Defendant Niemann was acting under color of state law and within the scope of his functions as a duly sworn, certified law enforcement officer employed by DeKalb County in the DeKalb County Police Department.

12.

DeKalb County is a political subdivision of the State of Georgia and is subject to the jurisdiction of this Court. DeKalb County may be served by personal service on its interim Chief Executive Officer, Lee May, at his place of employment located at the Manuel J. Maloof Center, 1300 Commerce Drive, 6th Floor, Decatur, Georgia, 30030.

13.

DeKalb County, acting pursuant to its governmental authority and under color of State law, operates the DeKalb County Police Department (hereinafter "DCPD"). The policies and practices of DCPD are imputable to DeKalb County.

14.

Plaintiffs timely served an *ante litem* notice upon DeKalb County on or about October 20, 2016.

15.

This action is timely pursuant to 42 U.S.C. § 1988 and O.C.G.A. § 9-2-61 because, among other things, it is filed within six months of the voluntary dismissal of a previous action between the same parties: *Bradley, et al., v. Benton, et al.*, 1:16-cv-03757-WSD (U.S. District Court for the Northern District of Georgia). The dismissal in the prior action was entered on October 10, 2017. Plaintiffs paid costs in the prior action.

16.

Venue is proper in this district as to all Defendants, because at least one Defendant resides in the Northern District of Georgia and the underlying events occurred in this district.

**FACTUAL ALLEGATIONS**

17.

On the evening of August 6, 2015, Mr. Troy Robinson was a passenger in a Chevrolet Tahoe sport-utility vehicle driven by Wilfred Sims in the parking lot of The Highlands at East Atlanta apartment complex located at 2501 Flat Shoals Road. Mr. Sims drove the Tahoe out of the apartment complex onto Flat Shoals Road, when he saw police lights behind him and pulled over near a Chevron station at the corner of Gresham Road and Flat Shoals.

18.

DeKalb County police officers Casey Benton and Charles M. Franklin were the officers who pulled Sims over. The pretext they gave was that the dealer drive-out tag on Mr. Sims's vehicle supposedly did not have an expiration date printed on it. This was untrue. The drive-out tag had an expiration date printed on it, the date had not yet passed, and the tag was still valid. Mr. Sims was not charged with any tag violation as a result of the stop.

19.

The real reason that officers Benton and Franklin had pulled Mr. Sims over was that they were part of a task force assigned by DeKalb County to crack down on gang activity at certain apartment complexes in the area. As part of this crackdown, DeKalb County had a pattern, practice, and *de facto* policy of making unlawful, pretextual stops of cars occupied by groups of young African-American men, despite the absence of probable cause to support the stops. In pulling over Mr. Sims, Officers Benton and Franklin were carrying out this pattern, practice, and policy of DCPD and DeKalb County.

20.

Officer Benton later stated that he "thought" he could smell a "faint" odor of marijuana in the car. This was also false. No marijuana was found in the car or on any of its occupants.

21.

When Officer Benton came to the driver's side window, Mr. Sims notified him that he was carrying a firearm in the car. Mr. Sims was lawfully in possession of the gun. With the full cooperation of Mr. Sims, Officers Benton and Franklin cleared the firearm and placed it in the patrol car of Officer Niemann, who had joined the other two officers at the scene. Mr. Robinson did not know Mr. Sims had the gun, and he never touched the weapon during this process.

22.

After securing Mr. Sims's gun, Officers Benton and Franklin (despite the absence of any probable cause or even reasonable suspicion of any offense) unlawfully continued to detain the Tahoe and its occupants and demanded identification from all of the occupants.

23.

Officer Franklin walked around to the passenger side window to obtain identification from Mr. Robinson. At this point, Mr. Robinson exited the Tahoe and fled on foot down Flat Shoals Road.

24.

Mr. Robinson was within his legal rights to leave the scene, because there was no legal basis for him to be detained. Mr. Robinson was not armed, was not suspected of any crime, and did not pose a threat to anyone.

25.

Officer Benton pursued Mr. Robinson on foot, while Officer Niemann followed in his patrol car.

26.

Mr. Robinson ran down a small path behind a Family Dollar store, scaled a chain-link fence, and reached the top of an eight-foot wall. On the other side of the wall was the Highlands at East Atlanta apartment complex. Residents of the complex often climb the wall and use the path to go to the Family Dollar store.

27.

As Mr. Robinson reached the top of the wall, Officer Benton came up behind him. Mr. Robinson's back was turned to Officer Benton, and he posed no threat whatsoever to Officer Benton or to anyone else.

28.

Officer Benton pointed his TASER X26 electronic control device upwards and discharged it towards Mr. Robinson's back. One of the TASER darts embedded itself in Mr. Robinson's shoulder; the other caught in his T-shirt near his hip.

29.

A TASER electronic control device works by sending a high-voltage electric charge through wires attached to the two barbed darts or "probes" that embed in the subject's body or clothing. The charge is at its strongest when both darts are embedded in the body at a good distance or "spread" from each other. If one of the darts is caught in clothing, however, the TASER is designed to allow the current to arc as much as an inch-and-a-half to the skin so that the circuit is still completed and the subject still receives an electrical impulse from the TASER.

The circuit also can be completed if the second dart comes into contact with the subject's skin, even if the barbed tip of the probe does not embed in the body.

30.

The electrical impulse from Officer Benton's TASER, and the surprise and pain of having his shoulder pierced by the TASER dart, caused Mr. Robinson to lose his grip and his balance at the top of the wall. He fell forward and landed on the ground inside the apartment complex, breaking his neck in the fall.

31.

As a crowd of residents gathered, Officer Niemann drove up to Mr. Robinson's inert body in his patrol car, handcuffed Mr. Robinson behind his back, and searched him. Officer Niemann then called Emergency Medical Services.

32.

Emergency Medical Services took Mr. Robinson to Grady Memorial Hospital, where he was pronounced dead.

33.

An autopsy was performed on Mr. Robinson. The Medical Examiner's report revealed abrasions in the area near where the second TASER dart was caught in his shirt, demonstrating that the second dart had made contact with his skin. The Medical Examiner determined that Mr. Robinson died of a broken neck.

**COUNT I: ESTATE CLAIM FOR PAIN AND SUFFERING**

34.

Plaintiff realleges and incorporates Paragraphs 1 through 33 as if fully set forth herein.

35.

Officer Benton knew or should have known that he had no lawful basis to detain Mr. Robinson.

36.

Officer Benton knew or should have known that both DCPD's use-of-force policy and nationwide standards of TASER use prohibited him from using the TASER on Mr. Robinson just because Mr. Robinson was running away.

37.

Officer Benton knew or should have known that both DCPD's use-of-force policy and nationwide standards of TASER use prohibited him from using the TASER on Mr. Robinson when he was at an elevated height from which he could fall and be injured.

38.

Despite this knowledge, Officer Benton discharged his TASER into Mr. Robinson's back solely because Mr. Robinson was running away, at a time when Mr. Robinson was at an elevated height from which he could fall and be injured.

39.

Officer Benton's use of the TASER on Mr. Robinson in these circumstances constituted a violation of ministerial duties; was intentional, willful, and malicious; and was an unreasonable use of potentially deadly force.

40.

By unlawfully firing his TASER into Troy Robinson's back, Defendant Benton directly and proximately caused Robinson significant pain and suffering, including but not limited to the pain of being pierced with the TASER dart; the pain of receiving an electrical impulse from the

TASER; the fear of losing his balance and falling from an eight-foot wall; the pain of his impact and the resulting injuries; and the terror of his impending death.

41.

The Estate of Troy Robinson is entitled to recover compensatory and punitive damages for Benton's wrongful acts described above.

## COUNT II: WRONGFUL DEATH

42.

Plaintiffs reallege and incorporate Paragraphs 1 through 40 as if fully set forth herein.

43.

The unlawful intentional acts of Defendant Benton as described in Count I, *supra*, proximately caused the wrongful death of Troy Robinson.

44.

Robinson's children, through their mothers and next friends, are entitled to recover the full value of Robinson's life in an amount to be determined by a jury.

## COUNT III: VIOLATIONS OF CIVIL RIGHTS

45.

Plaintiff realleges and incorporates Paragraphs 1 through 43 as if fully set forth herein.

46.

Acting under color of state law, Defendants Benton, Franklin, and Niemann violated Robinson's state and federal constitutional rights by seizing his person without probable cause or any lawful justification.

47.

Because of this unlawful seizure, Robinson's estate is entitled to compensatory, punitive, and/or nominal damages against Defendants Benton, Franklin, and Niemann pursuant to 42 U.S.C. § 1983.

48.

Acting under color of state law, Defendant Benton violated Robinson's state and federal constitutional rights by depriving him of liberty and life without due process of law.

49.

Because of this unlawful deprivation, Robinson's estate is entitled to compensatory and punitive damages against Defendant Benton pursuant to 42 U.S.C. § 1983.

50.

Acting under color of state law, Defendant DeKalb County violated Robinson's state and federal constitutional rights by maintaining a pattern, practice, and *de facto* policy of unlawfully and pretextually detaining black men in South DeKalb County without probable cause, in violation of the Fourth and Fourteenth Amendments. As a proximate result of this policy decision, Robinson was unlawfully detained.

51.

Because of this violation of Robinson's civil rights, Robinson's estate is entitled to compensatory, punitive, and/or nominal damages against DeKalb County pursuant to 42 U.S.C. § 1983.

52.

Acting under color of state law, Defendant DeKalb County was deliberately indifferent to the need to maintain current and adequate training and certification of its police officers,

including but not limited to Defendant Benton, in the proper, safe, and lawful use of TASER devices. DeKalb County knew that improper TASER use created a risk of injury and death to DeKalb citizens who interacted with DCPD police officers. DeKalb County became aware of this no later than May, 2010, when DCPD officers caused the death of Audrecas Davis by improperly using TASERS on him despite the fact that he was not subject to arrest for any crime. Despite this knowledge, DeKalb County failed to ensure that its officers, including Benton, received current and adequate training and certification in TASER use.

53.

DeKalb County's own policies and applicable national standards provide that an officer must be recertified for TASER use every twelve months in order to carry and use a TASER. DeKalb County knew that Officer Benton's most recent annual recertification for TASER use was approximately sixteen months before the incident in question. DeKalb County also knew that Officer Benton had not updated his TASER recertification training since an incident when he improperly used his TASER to incapacitate a man named Kent-Stephen Kinlocke on November 8, 2014, in the middle of a busy street, while arresting him for jaywalking. Ignoring the applicable policies and standards, DeKalb County provided Officer Benton with a TASER and allowed him to carry and use it on DeKalb county citizens, including Robinson, despite the fact that Benton lacked current and adequate training and certification. As a proximate result of DeKalb's deliberate indifference, Robinson was unlawfully deprived of liberty and life when Benton improperly used a TASER on him.

54.

Because of DeKalb County's violations of Robinson's civil rights, Robinson's estate is entitled to compensatory and punitive damages against DeKalb County pursuant to 42 U.S.C. § 1983.

## COUNT IV: ATTORNEY FEES AND EXPENSES OF LITIGATION

55.

Plaintiff realleges and incorporates Paragraphs 1 through 52 as if fully set forth herein.

56.

Because of Defendants' violations of his civil rights, Plaintiff is entitled to an award of costs, including but not limited to reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs respectfully request the following relief:

(a) That the Court award Plaintiffs compensatory, punitive, and/or nominal damages against all Defendants in an amount to be determined by the enlightened conscience of an impartial jury;

(b) That the Court grant Plaintiffs their reasonable costs and attorney's fees in bringing this action in an amount to be determined at trial;

(d) That Plaintiffs be granted a trial by jury on all issues so triable; and

(e) That Plaintiffs be granted such other and further relief as this Court deems just and proper.

This 1st day of May, 2018.

        Respectfully submitted,

        *s/ Mawuli M. Davis*
        ROBERT O. BOZEMAN
        Georgia Bar No. 073561
        MAWULI M. DAVIS
        Georgia Bar No. 212029

**The Davis Bozeman Law Firm, PC**
4153 C Flat Shoals Parkway
Suite 332
Decatur, Georgia 30034
(404) 244-2004
(404) 244-2020 (Fax)

        *s/ Leighton Moore*
        LEIGHTON MOORE
        Georgia Bar No. 520701

**The Moore Law Firm, PC**
100 Peachtree Street NW
Suite 2600
Atlanta, Georgia 30303
(678) 237-0330

        *Attorneys for Plaintiffs*