IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY JO BRADLEY, et al.

     Plaintiffs,

v.

OFFICER CASEY BENTON, et al.,

     Defendants.

Civil Action File No.
1:18-CV-01518-CAP

## DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Officer Casey Benton, Officer C.M. Franklin, and DeKalb County, Georgia respectfully submit the following Statement of Undisputed Material Facts in support of their Motion for Summary Judgment:

1.    Plaintiff Mary Jo Bradley is the mother of Troy Robinson, deceased, and the administratrix of his estate.  *See* Deposition of Mary Jo Bradley, July 11, 2017 ("Bradley Dep.")[1] (excerpts attached hereto as **Exhibit A**),[2] at 28:7-17.

---

[1] This lawsuit is a renewal of *Bradley, et al. v. Benton, et al.*, No. 1:16-CV-03757-WSD (N.D. Ga.) ("*Bradley I*").  As part of the stipulated dismissal of the first lawsuit, the parties agreed that all discovery taken in that case shall be usable in any renewed action.  *Id.*, Doc. 31.

[2] Pursuant to N.D. Ga. L.R. 56.1C, Defendants also are filing herewith the complete transcript of each deposition cited herein.

2.      Plaintiffs R.B., R.B., T.B., J.B., G.B., A.D., A.D., A.D., and T.D. are Robinson's children.  Bradley Dep., at 36:14-16, 36:24-37:1, 39:23-40:20, 43:5-6.

3.      Defendant DeKalb County, Georgia ("DeKalb County") is a local subdivision of the State of Georgia and a body corporate organized and existing under the Constitution of the State of Georgia.  Ga. Const. Art. 9, § 1, ¶ 1; O.C.G.A. § 36-1-3.

4.      Defendant Officer Casey Benton is, and was at all relevant times, a DeKalb County police officer.  *See* Deposition of Officer Casey Benton, June 22, 2017 ("Benton Dep.") (excerpts attached hereto as **Exhibit B**), at 17:20-18:10.

5.      Defendant Officer C.M. Franklin is, and was at all relevant times, a DeKalb County police officer.  *See* Deposition of Officer Charles M. Franklin, June 20, 2017 ("Franklin Dep.") (excerpts attached hereto as **Exhibit C**), at 11:8-14.

6.      On August 6, 2015, Benton and Franklin were members of a DeKalb County Police Department special operations team that was assigned to the areas in and around The Highlands of East Atlanta Apartments (also known as the East Hampton Apartments) at 2051 Flat Shoals Road, Decatur, Georgia.  Benton Dep., at 20:25-22:9; Franklin Dep., at 16:15-17:24; 30(b)(6) Deposition of Gregory

- 2 -

Vanderpool, July 24, 2017 ("Vanderpool 30(b)(6) Dep.") (excerpts attached hereto as **Exhibit D**), at 23:10-18.

7.     At that time, there had been a rise in gang-related and violent crime in those areas.  Benton Dep., at 20:25-22:19; Franklin Dep., at 17:8-17:24, 21:11-15; Vanderpool 30(b)(6) Dep., at 18:1-20:12.

8.     At approximately 7:00 p.m. on August 6, 2015, Benton was on duty and observed a vehicle exit The Highlands of East Atlanta Apartments towards Fayetteville Road.  Benton Dep., at 19:14-16, 23:6-16.

9.     When Benton observed the vehicle, he saw that the vehicle had a temporary license plate (or drive-out tag), but he did not see the expiration date required to be on the tag.  Benton Dep., at 23:9-16, 24:23-25:1; O.C.G.A. § 40-2-8(b)(2)(B)(i).

10.     While the temporary license plate observed by Benton did have an expiration date, the expiration date on the tag was not in the proper or usual location.  30(b)(6) Deposition of Tracy Rucker, July 24, 2017 ("Rucker 30(b)(6) Dep.") (excerpts attached hereto as **Exhibit E**), at 76:6-18; 30(b)(6) Deposition of Fred Renaud, July 24, 2017 ("Renaud 30(b)(6) Dep.") (excerpts attached hereto as **Exhibit F**), at 42:1-43:5; Deposition of L.O. Niemann, June 14, 2017 ("Niemann Dep.") (excerpts attached hereto as **Exhibit G**), at 106:24-107:6; Deposition of

Officer Charles Franklin, May 22, 2019 (excerpts attached hereto as **Exhibit H**), at

37:1-10.

     11.    A photograph of the temporary license plate observed by Benton is

below:



Rucker 30(b)(6) Dep., Ex. 4 (emphasis added).

     12.    The Georgia Department of Revenue regulates the appearance of

Georgia temporary license plates.  *See* O.C.G.A. §§ 40-2-1(3), 40-2-8.

     13.    A sample temporary tag sticker issued by the Georgia Department of

Revenue is below:



Declaration of Aaron Ross ("Ross Decl.") (attached hereto as **Exhibit I**) (emphasis

added).

14.     A photograph showing the back of the vehicle observed by Benton

with the tag is below:



Deposition of Wilford Sims, May 29, 2019 ("Sims Dep.") (attached hereto as

**Exhibit J**), Plfs.' Ex. 3.

15.     An improper temporary tag may indicate that a temporary license

plate is fake and was not issued by a dealer.  Renaud 30(b)(6) Dep., at 42:17- 43:5;

Rucker 30(b)(6) Dep., at 79:19-80:8.

16.     Having not observed the expiration date, Benton initiated a traffic stop

of the vehicle, and the vehicle pulled to a stop in the parking lot of the Chevron gas

station at the intersection of Flat Shoals Road and Fayetteville Road.  Benton Dep.,

at 23:9-16, 27:4-19.

17.     Unbeknownst to Benton, the vehicle's driver was Wilford Sims and

its lone passenger was Troy Robinson.  *See* Sims Dep., at 25:18-27-2, 73:4-6.

18.     Sims had just purchased the vehicle a couple of days earlier.  Sims

Dep., at 19:3-19:5.

19.     While living at The Highlands at East Atlanta Apartments and having

a vehicle during the three years preceding the stop, Sims had never been stopped

by police while driving inside or exiting the complex.  Sims Dep., at 42:2-43:37.

20.     At the time Benton announced that he was initiating the traffic stop

over radio, Franklin was on duty and patrolling inside The Highlands at East

Atlanta Apartments.  Franklin Dep., at 19:23-21:10, 23:10-25:23, 29:14-30:4.

21.     Without knowing the reason for the stop, Franklin proceeded to the

stop to provide backup.  Franklin Dep., at 30:15-31:2, 38:24-39:23.

22.     When Franklin arrived at the stop, Benton already was speaking to

Sims.  Franklin Dep., at 16:11-14, 40:5-9.

23.     At or about this time, Benton advised Sims of the reason for the stop

and requested Sims' driver's license.  Benton Dep., at 27:19-24.

24.     Benton also asked Sims whether he had any weapons in the car, and Sims identified a fully loaded handgun in the center console.  Sims Dep., at 26:14-18, 53:18-23, 57:16-58:8, 65:20-23.

25.     In response, Benton asked Sims to step out of the vehicle, which Sims did, removed the gun, and handed it to Franklin.  Benton Dep., at 28:1-24.

26.     Benton then told Sims that he could sit back in his car, which Sims did.  Benton Dep., at 28:24-29:2.

27.     Benton then asked Robinson whether Robinson had any identification, and Robinson said no.  Benton Dep., at 29:19-22.

28.     At or about that time, DeKalb County police officer L.O. Niemann arrived at the stop as additional backup.  Niemann Dep., at 35:3-17, 40:2-41:5.

29.     According to Sims, after Robinson stated that he did not have any identification, Benton asked either Franklin or Niemann to get Robinson's name.  Sims Dep., at 26:19-27:2.

30.     At or about that point, Robinson fled from the vehicle across Fayetteville Road and through the parking lot of the Family Dollar on Flat Shoals Road to where it abutted the back of The Highlands at East Atlanta Apartments.  Sims Dep., at 26:23-27:2; Franklin Dep., at 43:21-44:5.

31.     In response to Robinson's flight, Benton began chasing on foot, Niemann attempted to follow in his vehicle, and Franklin remained with Sims. Benton Dep., at 34:4-8.

32.     As Benton was chasing Robinson, Franklin advised Benton over radio to "watch [Robinson's] waistband [because] he's holding something," indicating that Robinson may be carrying a weapon.  Declaration of William Wallace ("Wallace Decl.") (attached hereto as **Exhibit K**), Ex. 1(a) (at 2:03); Benton Dep., at 34:12-24; Franklin Dep., at 44:24-45:18.

33.     Behind the Family Dollar parking lot was a small wooded area that sloped down to a chain-link fence that stood a few feet in front of concrete wall separating the Family Dollar from The Highlands at East Atlanta Apartments. Wallace Decl., Exs. 1(f) & 2 (GBI 00151); Benton Dep., at 34:20-35:14, 39:13-41:12

34.     Photographs of portions of this area are below:

  

Wallace Decl., Exs. 1(f).

35.     By the time Robinson reached the fence, Benton had closed the distance to Robinson to approximately ten feet.  Benton Dep., at 38:15-21, 40:14-41:9, 47:10-24; Wallace Decl., Ex. 2 (GBI 00055).

36.     Recognizing that Robinson was going to attempt to climb the fence and over the wall to the apartments, and believing it unsafe to follow, Benton drew his taser and deployed it at Robinson while Robinson still was on the ground. Benton Dep., at 35:17-36:1, 45:19-46:3; Niemann Dep., at 69:20-70:5.

37.     However, the taser did not achieve the intended effect of incapacitating Robinson, because only one of the two taser probes pierced Robinson's skin (with the other probe getting stuck in Robinson's clothing). Benton Dep.. at 36:1-10; Niemann Dep., at 70:18-23; Deposition of Lt. Gregory T. Vanderpool, June 20, 2017 (attached hereto as **Exhibit L**), at 50:1-50:7; Wallace Decl., Ex. 2 (GBI 00133, 142).

38.     Benton stopped his taser short of the full 5-second cycle, and Robinson proceeded to climb up the fence and to the top of the wall.  Benton Dep.. at 36:1-10; Niemann Dep., at 70:18-23; Wallace Decl., Ex. (GBI 00112).

39.     While Robinson was on top of the wall, witnesses testified to seeing or hearing Robinson ask for help multiple times while on top of the wall, with one

witness reporting that he could see taser wires on Robinson at the time.  Deposition

of De. Shaw, May 21, 2019 ("De. Shaw Dep.") (attached hereto as **Exhibit M**), at

20:11-15, 31:23-32:11, 35:21-38:21 & Defs.' Ex. 1; Deposition of Neffertiti Geter,

May 20, 2019 ("Geter Dep.") (attached hereto as **Exhibit N**), at 54:20-60:8 &

Defs.' Ex. 2.

40.     Robinson would not have been able to ask for help multiple times if

he were experiencing the full effects of the taser.  *See* Rucker 30(b)(6) Dep., at

39:12-19, 48:4-18; Wallace Decl., Ex. 2 (GBI 00134).

41.     According to one witness, Robinson appeared to lose his balance at

the top of the wall before falling over the wall.  Wallace Decl., Exs. 1(e) & 2 (GBI

00105).

42.     Another witness described Robinson as looking like he was trying to

hold onto the wall to prevent himself from falling but being unable to hold onto the

wall.  De. Shaw, at 40:23-41:12.

43.     A third witness testified that Robinson stiffened up "like he went into

shock" before falling.  Deposition of Da. Shaw, May 21, 2019 ("Da. Shaw Dep.")

(excerpts attached hereto as **Exhibit O**), at 23:21-24:10.

44.     As a result of the fall, Robinson suffered blunt force trauma to his

head and neck, causing his death.  Wallace Decl., Ex. 2 (GBI 00137).

45.     The DeKalb County Medical Examiner ruled Robinson's death to be accidental.  Wallace Decl., Ex. 2 (GBI 00137, 143).

46.     After Robinson went over the wall, Benton advised over radio of Robinson's location and his taser deployment.  Wallace Decl., Ex. 1(a) (at 2:31).

47.     Shortly thereafter, Niemann located Robinson, unconscious, and called for emergency medical services, which took Robinson to the hospital, where he was pronounced dead.  Wallace Decl., Exs. 1(a) (at 2:31) & 2 (GBI 00149, 257); Niemann Dep., at 77:4-6.

48.     At DeKalb County's request, the Georgia Bureau of Investigation (the "GBI") came to the scene to investigate the incident.  *See* Wallace Decl., Ex. 2 (GBI 00038); Renaud 30(b)(6) Dep., at 18:19-19:8.

49.     When the GBI concluded its investigation, it provided its findings to the DeKalb County District Attorney and to the DeKalb County Police Department.  Renaud 30(b)(6) Dep., at 78:17-79:9.

50.     The DeKalb County District Attorney determined that no criminal conduct had occurred.  Ross Decl., Ex. 2 (DAO 0151).

51.     Following its internal investigation, the DeKalb County Police Department concluded that no department policies had been violated either. Renaud 30(b)(6) Dep., at 87:1-88:5.

52.     At all relevant times, DeKalb County has had written policies for its police officers regarding, among other things, traffic enforcement, vehicle stops, foot pursuits, and use of force, including the use of tasers.  Wallace Decl. ¶ 5 & Ex. 4.

53.     At all relevant times, DeKalb County has provided extensive training to its police officers on, among other topics, traffic enforcement, vehicle stops, foot pursuits, and use of force, including the use of tasers.  *See* Rucker 30(b)(6) Dep., at 9:2-24 & Ex. 11; Benton Dep., at 18:11-19:13, 65:12-66:25.

54.     DeKalb County's training of its police officers exceeds the minimum training required to be a police officer in Georgia by the Georgia Peace Officer Standards and Training Council.  Rucker 30(b)(6) Dep., at 9:2-24 & Ex. 11; O.C.G.A. § 35-8-21.

55.     DeKalb County requires a report to be created any time force is used or even alleged to have been used in the line of duty.  Wallace Decl., Ex. 4 (§ 4-6.6).

56.     The report must be reviewed and approved by Internal Affairs and/or specific supervisory personnel.  Wallace Decl., Ex. 4 (§ 4-6.6).

57.     In certain cases, such as in the instant case, DeKalb County further convenes an Internal Review Board consisting of high-ranking officers to review

the incident and ensure that any violations are addressed and that all officers are properly trained.  Wallace Decl., Ex. 4 (§ 4-6.21); Renaud 30(b)(6) Dep., at 86:19-87:20.

58.     DeKalb County's taser policy provides that only officers certified in the use of a taser may carry one.  Wallace Decl., Ex. 4 (§ 4-6.4(A)(1)).

59.     DeKalb County requires its officers who are certified in the use of a taser to re-certify on the taser "once a year," meaning once per calendar year and not within 12 months of the prior certification.  Wallace Decl., Ex. 4 (§ 4-6.4(A)(3)), Rucker 30(b)(6) Dep., at 57:17-25.

60.     DeKalb County's requirement that its officers who are certified in the use of a taser re-certify on the taser "once a year," as opposed to within 12 months of the prior certification, follows the taser manufacturer guidelines.  *See* Ross Decl., Ex. 4.

61.     Benton, who certified on his taser on April 15, 2014 (and re-certified on October 6, 2015) was properly certified to use his taser at all relevant times. *See* Rucker 30(b)(6) Dep., at  56:18-24 & Ex. 11; Benton Dep., at 18:22-19:4.

62.     DeKalb County's taser policy provides, among other things, that "[a]n officer's decision to deploy the [taser] shall involve an arrest or custodial situation

wherein the subject is escalating resistance from passive physical resistance towards active physical resistance."  Wallace Decl., Ex. 4 (§ 4-6.4(B)(2)).

63.    With respect to a fleeing person, DeKalb County's taser policy states in bold letters that "[a] subject's flight should not be the sole justification for deploying [a taser]"; and when taser use is justified, it "should be predicated upon the totality of the circumstances and the considerations [specifically identified]." Wallace Decl., Ex. 4 (§ 4-6.4(C)(10)).

Respectfully submitted, this 31st day of July, 2019.

Laura K. Johnson
Deputy County Attorney
Georgia Bar No. 392090

s/ Aaron J. Ross
Aaron J. Ross
Senior Assistant County Attorney
Georgia Bar No. 461981

Omari J. Crawford
Assistant County Attorney
Georgia Bar No. 179965

*Counsel for Defendants*

- 14 -

PLEASE ADDRESS ALL
COMMUNICATIONS TO:

Aaron J. Ross
Senior Assistant County Attorney
ajross@dekalbcountyga.gov
Omari J. Crawford
Assistant County Attorney
ojcrawford@dekalbcountyga.gov
**DEKALB COUNTY LAW DEPARTMENT**
1300 Commerce Drive, 5th Floor
Decatur, Georgia 30030
Telephone:  (404) 371-3011
Facsimile:  (404) 371-3024

## CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system (which document was prepared in Times New Roman font, 14-point type, one of the font and point selections approved by the Court in N.D. Ga. L.R. 5.1(C)), which will automatically send e-mail notification of such filing to the following opposing counsel of record:

Robert O. Bozeman
Mawuli M. Davis
Harold W. Spence
The Davis Bozeman Law Firm, PC
4153 C Flat Shoals Parkway, Suite 332
Decatur, Georgia 30034

Leighton Moore
The Moore Law Firm, PC
100 Peachtree Street NW, Suite 2600
Atlanta, Georgia 30361

This 31st day of July, 2019.

s/ Aaron J. Ross
Aaron J. Ross
Senior Assistant County Attorney
DeKalb County Law Department

*One of the Attorneys for Defendants*